130 Nev., Advance Opinion 51

IN THE SUPREME COURT OF THE STATE OF NEVADA

PAMELA HOLDAWAY-FOSTER, A/K/A
PAMELA JANE BRUNELL,
Appellant,
vs.
ROBERT GENE BRUNELL,
Respondent.

No. 61655

**FILED**

JUN 2 6 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a post-divorce decree district court order declining to take jurisdiction in a child support matter. Eighth Judicial District Court, Family Court Division, Clark County; Jennifer Elliott, Judge.

*Reversed and remanded.*

Greenberg & Nguyen, Attorneys, and Mike H.T. Nguyen, Las Vegas, for Appellant.

Joseph W. Houston, II, Las Vegas, for Respondent.

_____

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, DOUGLAS, J.:

In this opinion we consider whether a 1989 Nevada child support order is controlling under the Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B (2012), when the mother and

12/17/14: Corrected per letter to publishers. CT

14-20948

children continuously resided in Nevada and the parents did not consent to the assumption of jurisdiction over and modification of the order by a court in Hawaii, the father's new state of residence. To do so, we must determine whether the Act applies retroactively. We hold that the Act applies retroactively, and that under it, Nevada has continuing, exclusive jurisdiction. Consequently, we conclude that the 1989 Nevada child support order controls.

## FACTS

Appellant Pamela Holdaway-Foster and respondent Robert Brunell divorced in Nevada in 1985. In the divorce decree, the district court granted Pamela custody of the parties' two children and ordered Robert to pay Pamela $200 per month in child support. In 1989, the district court increased Robert's child support obligation to $625 per month. Subsequently, Robert relocated to Hawaii and allegedly ceased making the child support payments.

After Robert's relocation to Hawaii, Pamela filed a uniform support petition in the Nevada district court, seeking to register the 1989 Nevada child support order in Hawaii, under the Uniform Interstate Family Support Act (UIFSA). The Hawaii court issued an administrative order that continued the 1989 Nevada child support order, mandating Robert to pay $625 per month in support and $50 per month toward arrears. Subsequently, Robert filed a motion in Hawaii contesting the child support order and asserting that he could not pay the requisite amount. In 1992, after holding a hearing on the matter, the Hawaii court entered an order reducing Robert's child support obligation to $350 per month, determining that Robert had already paid $15,000 toward child

support, and directing him to pay $10 per month toward the remaining arrears. The Hawaii court notified Pamela of its decision.

Pamela sent a letter to the Clark County District Attorney's office in which she asserted that Robert did not make $15,000 in child support payments. The District Attorney's office forwarded the letter to the Hawaii Child Support Enforcement Agency, and a representative from the agency informed Pamela that she had 30 days to appeal the Hawaii court order and that although the Hawaii order did not supersede the Nevada order, Hawaii would nevertheless enforce its order. The representative also informed Pamela that she could pursue an action in Nevada to recoup the difference between the orders. Pamela did not appeal the 1992 Hawaii order.

In 1996, the Hawaii court entered another order further reducing Robert's child support obligation to $100 per month, but increasing his arrears payment to $50 per month. The Hawaii court once again notified Pamela of its decision, and again, she did not appeal.

Several years later, after the children reached majority, Pamela filed a motion for a controlling order determination and for a judgment of arrears in the Nevada district court. In the motion, Pamela requested the Nevada court to determine that the 1989 Nevada child support order was controlling and to reduce to judgment the child support arrears that had accrued under the order. Robert argued that Pamela should have brought her motion in the Hawaii district court, not in Nevada. Robert also asserted that waiver and estoppel barred Pamela from collecting arrears.

The Nevada district court determined that it had lost jurisdiction over the matter and could not review or modify the Hawaii

court's orders because Pamela failed to contest the orders within ten days of their issuance. Alternatively, the Nevada district court determined that even if it had jurisdiction to review the Hawaii orders, Pamela implicitly waived her right to challenge them because she received proper notice of the orders and failed to timely contest their validity. Consequently, the district court denied Pamela's request to reduce the unpaid amount under the 1989 Nevada child support order to a judgment. Pamela then filed this appeal challenging the district court's decision, asserting that the Nevada support order is controlling under federal law.[1]

## DISCUSSION

### Standard of review

This appeal requires us to address whether the district court had continuing, exclusive jurisdiction to enforce and modify its child support order. This court reviews a district court's decision regarding subject matter jurisdiction de novo. *Ogawa v. Ogawa*, 125 Nev. 660, 667-68, 221 P.3d 699, 704 (2009).

### Retroactive application of the federal law

Congress enacted the Full Faith and Credit for Child Support Orders Act in 1994 to regulate multiple and inconsistent child support orders from different states. *Twaddell v. Anderson*, 523 S.E.2d 710, 717 (N.C. Ct. App. 1999). The Act also provides guidelines for recognizing which state has continuing, exclusive jurisdiction. 28 U.S.C. § 1738B(d).

---

[1]Pamela also contends that Hawaii lacked jurisdiction to alter the Nevada support order under the UIFSA and the Revised Uniform Reciprocal Enforcement of Support Act. In light of our conclusion that the Act governs here, we need not address these issues.

Under the Act, a court that has issued a child support order has continuing, exclusive jurisdiction and courts in other states are prohibited from modifying the child support order unless certain jurisdictional criteria are met. 28 U.S.C. § 1738B(e).

Under the Supremacy Clause of the United States Constitution, the Act preempts any contrary or inconsistent state law, *see* U.S. Const. art. VI, cl. 2, thus, it is the controlling authority in this matter. Because the Act became effective after the Nevada child support orders and the Hawaii court's initial modification were entered, we must decide whether it should apply retroactively, which poses an issue of first impression in Nevada.

Pamela asserts that this court should apply the Act retroactively and determine that the Nevada child support order controls in this matter. To support this assertion, Pamela notes that other courts have applied the federal statute retroactively. In response, Robert does not address the Act's application directly, but instead maintains that the Hawaii orders control because Pamela did not seek to enforce the Nevada support order in Hawaii; rather, she established a new order in the Hawaii court, thereby providing Hawaii with jurisdiction over the matter. Robert's argument is without merit because the Hawaii court order expressly stated that it was modifying the Nevada child support obligation. Accordingly, we turn to the issue concerning the Act's retroactive application.

Generally, courts apply statutes prospectively unless the legislature clearly manifests an intent for retroactive application or the statute's purpose cannot otherwise be satisfied. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 271 (1994); *McKellar v. McKellar*, 110 Nev. 200, 203,

871 P.2d 296, 298 (1994). We have also held that courts should apply statutes retroactively when the statute affects only remedies and procedure and does not create new substantive rights. *Valdez v. Emp'rs Ins. Co. of Nev.*, 123 Nev. 170, 179-80, 162 P.3d 148, 154 (2007).

The Act is silent as to whether it applies retroactively; so, we must look to the purposes behind the Act, which we conclude mandate retroactive application. The Act has three purposes: "(1) to facilitate the enforcement of child support orders among the [s]tates; (2) to discourage continuing interstate controversies over child support . . . ; and (3) to avoid jurisdictional competition and conflict among [s]tate courts [when establishing] child support orders[.]" Full Faith and Credit for Child Support Orders Act, Pub. L. No. 103-383, 108 Stat. 4063 (1994). A strict prospective application would frustrate the Act's purposes because the very issues that Congress designed the Act to resolve would persist. Interstate conflicts and controversies would continue regarding child support orders entered before enactment. Further, a prospective application likely would make enforcing child support orders more difficult because orders entered before the Act's effective date would be subject to different procedural rules than those entered after that date. Additionally, the Act is remedial in nature because it was designed to assist in collecting past child support arrears. *See Ga. Dep't of Human Res. v. Deason*, 520 S.E.2d 712, 720 (Ga. Ct. App. 1999) (holding that the Act did not create a new right, rather it provided an avenue to enforce an existing obligation). Therefore, we determine that the Act must be retroactively applied. We note that this determination is consistent with other jurisdictions that have considered this same issue. *See, e.g., In re Marriage of Yuro*, 968 P.2d 1053, 1057 (Ariz. Ct. App. 1998); *In re*

*Marriage of Lurie*, 39 Cal. Rptr. 2d 835, 844 (Ct. App. 1995); *Deason*, 520 S.E.2d at 719; *Twaddell*, 523 S.E.2d at 717.

*Jurisdiction under the Act*

Having concluded that the Act applies retroactively, we must now determine whether Nevada has jurisdiction over child support in this case. Under the Act, "a [state] court . . . that has made a child support order consistent[ ] with [the Act] has continuing, exclusive jurisdiction over the order if the [s]tate is the child's [s]tate or the residence of any individual contestant . . . ," unless another state court has modified the order in accordance with the Act. 28 U.S.C. § 1738B(d). A state court may modify an existing support order of another state if the parties file written consent to the modification. 28 U.S.C. § 1738B(e)(2)(B).

Here, the district court erred in determining that Nevada lacked jurisdiction over this matter. Nevada has continuing, exclusive jurisdiction over the child support matter because it had jurisdiction when it issued the original order, and Pamela and the children have continuously resided in Nevada, including the time during which the Hawaii court modified the order. And no evidence suggests that the Nevada child support order and its subsequent modification did not comply with the federal law. Therefore, the Hawaii court could have properly modified the Nevada order only if Pamela and Robert filed written consent in Nevada to give Hawaii exclusive, continuing jurisdiction over the Nevada order. *See* 28 U.S.C. § 1738B(e)(2)(B). Neither party filed such consent; thus, Hawaii did not have jurisdiction to modify the 1989 Nevada child support order. Consequently, the Hawaii court's orders have no legal effect. *See Swan v. Swan*, 106 Nev. 464, 469,

796 P.2d 221, 224 (1990) (holding that a district court's custody ruling was void because the court lacked subject matter jurisdiction).

Pamela's failure to formally object to the Hawaii modifications is immaterial because a challenge to a court's subject matter jurisdiction is not waivable, unless by written consent, and can be raised at any time, or reviewed sua sponte by an appellate court. *Id.* Moreover, our determination that Nevada never lost continuing, exclusive jurisdiction over this matter necessitates a finding that the 1989 Nevada order controls for the purpose of determining Robert's child support arrears. *See* 28 U.S.C. § 1738B(f)(2) (providing that when two courts issue a child support order but only one has continuing, exclusive jurisdiction under the Act, that court's order must be recognized).

Although we conclude that the 1989 Nevada child support order controls, the district court still must determine whether Pamela can collect arrears from Robert under the order. We have held that an obligor may assert equitable defenses, such as waiver and estoppel, in a proceeding to reduce child support arrearages to judgment. *See Parkinson v. Parkinson*, 106 Nev. 481, 483, 796 P.2d 229, 231 (1990), *abrogated on other grounds by Rivero v. Rivero*, 125 Nev. 410, 216 P.3d 213 (2009). Due to its jurisdictional error, the district court never addressed Robert's arguments that Pamela waived or was estopped from recovering arrears under the Nevada order.

Accordingly, we reverse the district court's order concluding that it lacked jurisdiction over the child support matter, and we remand this case to the district court to conduct a new hearing as to the child support arrears and for any other proceedings consistent with this opinion.

_____, J.
Douglas

We concur:

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Saitta